**Entered on Docket
December 19, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: December 19, 2006**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                   No. 06-40029 TK
                                        Chapter 7
MICHAEL ANGELO CARBAAT,

        Debtor.
_____/

JOHN T. KENDALL, Trustee,               A.P. No. 06-4092 AT

        Plaintiff,

   vs.

SILVIA CARBAAT, SUSAN HESTER
NEWCOMB,

        Defendants.
_____/

**MEMORANDUM OF DECISION**

In this adversary proceeding, plaintiff John T. Kendall, the duly appointed chapter 7 trustee, (the "Trustee") seeks to avoid the pre-petition transfer by the debtor (the "Debtor") to his former wife, defendant Silvia Carbaat ("Silvia"), of his interest in their family home (the "House") and in an unsecured promissory note (the "Note") pursuant to 11 U.S.C. § 548(a) and § 544(b). He also seeks to recover the transfers or their value from Silvia pursuant to 11

U.S.C. § 550(a)(1) and, with respect to his interest in the House, from defendant Susan Hester Newcomb ("Newcomb"), Silvia's mother, as a subsequent transferee pursuant to 11 U.S.C. § 550(a)(2). The proceeding was tried to the Court on December 11, 2006 and, at the conclusion of the trial, was taken under submission. The Court's findings and conclusions are set forth below.

**SUMMARY OF FACTS**

The Debtor and Silvia were married on May 20, 2000. They separated on October 19, 2003 and were divorced on October 29, 2004. During their marriage, they had two children, who are currently five and seven years old, respectively. They purchased the House in February 2002. Newcomb loaned them the money for the down payment: i.e., approximately $25,000.

The marital settlement agreement (the "MSA") provided that the Debtor would transfer his interest in the House to Silvia. She agreed to refinance the mortgage within 90 days to remove the Debtor's name from the underlying promissory note. The Debtor also transferred to Silvia a promissory note for $15,600 owed to the couple by third parties (the "Note"). The Debtor received sole ownership of three vehicles. Silvia waived the right to future spousal support. Each party agreed to bear his or her own attorneys' fees. The MSA was incorporated into the divorce decree.

Silvia was unable to obtain the refinancing based on her own credit. Consequently, in November 2003, she transferred the House to Newcomb as trustee of a family trust (the "Trust"). Silvia and her

2

brother were the sole beneficiaries of the Trust.  Newcomb's credit permitted her to refinance the mortgage.

On January 12, 2006, the Debtor filed a chapter 7 petition, commencing this case.  Thus, this case is governed by the amendments to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  This adversary proceeding was commenced on March 5, 2006.

## DISCUSSION

### A. OVERVIEW

The Trustee's First Amended Complaint (the "Complaint") stated seven claims for relief: (1) fraudulent conveyance under 11 U.S.C. § 548(a)(1), (2) fraudulent conveyance under 11 U.S.C. § 548(a)(2), (3) fraudulent conveyance under 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439.04, (4) fraudulent conveyance under 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439.05, (5) to recover the avoided transfer or its value from Newcomb under 11 U.S.C. § 550(a)(2), (6) objecting to any claims filed by defendants under 11 U.S.C. § 502(d), and (7) for sale of co-owner's interests pursuant to 11 U.S.C. § 363(h).

No evidence was provided on the sixth and seventh claims, and they were not discussed in the trial briefs.  Therefore, these claims will be dismissed without prejudice.  The Court will address together the first and third claims, on the one hand, and the second and fourth claims, on the other, as they are substantially the same claims.  Thereafter, the Court will address the fifth claim for relief.

**A. AVOIDANCE OF TRANSFERS AS ACTUALLY FRAUDULENT**

    **1. Applicable Law**

As applicable to this case, 11 U.S.C. § 548(a)(1)(A) provides, in pertinent part, as follows:

> The trustee may avoid any transfer...of an interest of the debtor in property...that was made...within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>   (A) made such transfer...with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made...indebted....

11 U.S.C. § 548(a)(1)(2005).

Section 3439.04(a)(1) of the California Civil Code provides, in pertinent part, as follows:

> A transfer made...by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made..., if the debtor made the transfer...as follows:
>   (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

Cal. Civ. Code § 3439.04(a)(1). Section 3439.07(a)(1) provides as follows:

> In an action for relief against a transfer...under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain:
>   (1) Avoidance of the transfer...to the extent necessary to satisfy the creditor's claim.

Cal. Civ. Code § 3439.07(a)(1). Section 3439.08(a) provides, in pertinent part, as follows:

> A transfer...is not voidable under paragraph (1) of subdivision (a) of Section 3439.04 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee.

4

Section 3439.09(a) provides, in pertinent part, as follows:

> A cause of action with respect to a fraudulent transfer...under this chapter is extinguished unless action is brought pursuant to subdivision (a) of Section 3439.07...:
>   (a) Under paragraph (1) of subdivision (a) of Section 3439.04, within four years after the transfer was made....

With exceptions not relevant to this proceeding, 11 U.S.C. § 544(b) of the Bankruptcy Code provides that:

> ...the trustee may avoid any transfer of an interest of the debtor in property...that is voidable under applicable law by a creditor holding an [allowable] unsecured claim....

11 U.S.C. § 544(b)(1). As relevant to this proceeding, 11 U.S.C. § 546(a)(1) requires a trustee to file an avoidance action under either 11 U.S.C. § 544 or 548 within two years after the entry of the order for relief.

**2. Decision**

The Trustee contends that the transfer of the Debtor's interests in the Note and the House were actually fraudulent and should be avoided pursuant to the statutes recited above. The proceeding was timely filed pursuant to 11 U.S.C. § 546(a)(1). In addition, the transfers occurred within the time frame established by the applicable version of 11 U.S.C. § 548(a)(1) and Cal. Civ. Code § 3439.09(a). The only issue presented for this Court is whether, based on the evidence presented, the transfers were made with actual intent to hinder, delay, or defraud a creditor.

At the conclusion of the trial, the Court made an oral ruling on these claims. The Court stated that the evidence was not sufficient

5

Case: 06-04092    Doc# 29    Filed: 12/19/06    Entered: 12/19/06 16:03:51    Page 5 of 17

to establish that the transfers were made with actual intent to hinder, delay, or defraud a creditor. The Trustee asserted that the Court should find sufficient to establish actual intent the fact that several badges of fraud were present. <u>See</u> Cal. Civ. Code § 3439.04(b): e.g., the transfer was made to an insider. He contended that the MSA was collusive.

The Court was not persuaded. Assuming a divorce is not collusive, the Court does not consider a spouse an insider of the divorcing spouse. The Court was persuaded by the demeanor of the parties that the divorce was not collusive. The only suspicious aspect of the transaction was Silvia's subsequent transfer of the House to Newcomb, as trustee of the Trust. However, the reason for this subsequent transfer was explained to the Court's satisfaction: i.e., to permit Newcomb to refinance the House as required by the MSA. Thus, the Court finds for Silvia on the first and third claims and will not avoid the transfers as actually fraudulent.

**B. AVOIDANCE OF TRANSFERS AS CONSTRUCTIVELY FRAUDULENT**

    **1. Applicable Law**

As applicable to this case, 11 U.S.C. § 548(a)(1)(B) provides, in pertinent part, as follows:

> The trustee may avoid any transfer...of an interest of the debtor in property...that was made...within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
> ...
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made...or became insolvent as

6

> a result of such transfer...;

11 U.S.C. § 548(a)(1)(B)(2005). As relevant here, "insolvent" is defined as a:

> financial condition such that the sum of...[the debtor's] debts is greater than all of...[the debtor's] property, at a fair valuation, exclusive of–
> (i) property transferred, concealed or removed with intent to hinder, delay, or defraud such entity's creditors, and
> (ii) property that may be exempted from property of the estate under section 522 of...[the Bankruptcy Code.]

11 U.S.C. § 101(32)(A).

Section 548(d)(2)(A) states as follows:

> "[v]alue" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor....

11 U.S.C. § 548(d)(2)(A).

Section 3439.05 of the California Civil Code provides, in pertinent part, as follows:

> A transfer made...by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made...if the debtor made the transfer...without receiving a reasonably equivalent value in exchange for the transfer...and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer....

Cal. Civ. Code § 3439.05. Section 3439.01(a) states as follows:

> "Asset" means property of a debtor, but the term does not include, the following:
> (1) Property to the extent it is encumbered by a valid lien.
> (2) Property to the extent it is generally exempt under nonbankruptcy law.

7

Cal. Civ. Code § 3439.01(a). Section 3439.02, in pertinent part, states as follows:

> (a) A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets.
> ...
> (c) A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent.
> ...
> (e) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

Cal. Civ. Code § 3439.02. Section 3439.03, in pertinent part, states as follows:

> Value is given for a transfer...if, in exchange for the transfer...property is transferred or an antecedent debt is secured or satisfied but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Cal. Civ. Code § 3439.03. This type of claim is also extinguished if an action is not filed within four years of when the transfer occurred. <u>See</u> Cal. Civ. Code § 3439.09(b).

As set forth in the preceding section, Cal. Civ. Code § 3439.07(a)(1) provides as follows:

> In an action for relief against a transfer...under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain:
> (1) Avoidance of the transfer...to the extent necessary to satisfy the creditor's claim.

Cal. Civ. Code § 3439.07(a)(1). Section 3439.08(a) provides, in pertinent part, as follows:

8

> A transfer...is not voidable under paragraph (1) of subdivision (a) of Section 3439.04 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee.

Finally, as also set forth in the preceding section, 11 U.S.C. § 544(b) permits a chapter 7 trustee to file an avoidance action that could have been filed by a creditor under nonbankruptcy law. 11 U.S.C. § 544(b). The Trustee has two years from the date of entry of the order for relief to file the action. See 11 U.S.C. § 546(a)(1).

**2. Decision**

The only issues presented by these two claims are: (1) whether the Debtor received reasonably equivalent value for the transfers and (2) if not, whether the Debtor was insolvent at the time of the transfers or was rendered insolvent by the transfers.

**(1) Reasonably Equivalent Value**

As set forth above, both 11 U.S.C. § 548(a)(1)(B) and Cal. Civ. Code § 3439.05 define a constructively fraudulent transfer as a transfer for which the debtor did not receive "reasonably equivalent value." To determine whether the transfers sought to be avoided by the Trustee were constructively fraudulent, the Court must determine the value of what the Debtor transferred and the value of what he received.[1] The Court must then determine whether the latter value is reasonably equivalent to the former. "Reasonable equivalence" does not require exact equality in value. In re Food & Fibre Prot.,

---

[1] Since all of the transfers made and value received were part of the MSA, there is no question concerning whether the value received was "in exchange" for the transfers made as required by both statutes.

9

Ltd., 168 B.R. 408, 417 (Bankr. D. Ariz. 1994); see also BFP v. Resolution Trust Corp., 511 U.S. 531, 540 n.4 (1994).

**(a) Value of Transferred Property**

The complaint seeks to avoid two transfers: (1) the transfer of the Debtor's interest in the House and (2) the transfer of the Debtor's interest in the Note. The balance due on the Note was $15,800. Thus, the value of the Debtor's interest in the Note was $7,900.[2]

The value of the Debtor's interest in the House at the time of the transfer was disputed. The Debtor listed the value of the House as $290,000 in his bankruptcy schedules. However, at the trial, the Trustee called an appraiser as an expert witness who valued the House at $372,000. Silvia contended that the value of the House was $320,000.

The Court concludes that the House should be valued at $350,000. The closest comparable house in size, age, and location sold for $372,000 in approximately the same time frame. However, evidence was presented that this house had been remodeled recently whereas the House had deferred maintenance. The appraiser admitted that he did not inspect the inside of the House. The balance of the secured debt was approximately $290,000. As a result, the net equity in the House

---

[2]Silvia contended that the value of the Note should be reduced by the costs incurred to collect the balance due. She contended that these costs totaled approximately $1,800. The Court was not persuaded. It was not inevitable that these costs would be incurred in order to realize the value of the Note.

10

was approximately $60,000 and the Debtor's share of that was $30,000. Thus, the total value of these two transfers was $37,900.

**(b) Value of Property Received**

In return for these transfers, the Debtor received sole ownership of three vehicles with a net equity of $3,500. On his bankruptcy schedules, he listed other personal property with a total value of approximately $6,500. Presumably, at the time of the transfers he owned the same assets or others of the same type of a similar value. The MSA gave him the sole ownership of these assets as well, thus increasing the total value of property he received to approximately $6,750.

Silvia also agreed to refinance the home mortgage so as to obtain a release of the Debtor's liability on the underlying note. This agreement had no value. A debtor has no personal liability on a note secured by a purchase money mortgage on his residence. See Cal. Civ. Proc. Code § 580b. Silvia also agreed to assume the $25,000 debt to Newcomb for the down payment on the House. This agreement had a value to him of $12,500, thus increasing the value of the property he received to approximately $19,250. The Trustee contends that this is the full extent of the property received by the Debtor in exchange for the transfers. The Court finds $19,205 to be less than reasonably equivalent in value to $37,900. It finds that the minimum amount of value that would be reasonable equivalent is $26,530: i.e., 70 percent of the value transferred. The value received that has been discussed thus far falls short of this number by $7,325.

11

Silvia contends that the Court should consider two other items given to the Debtor to be of value in excess of this figure: (1) her agreement to pay her own attorneys' fees and (2) her waiver of spousal support. The Court concludes that a waiver of spousal support cannot serve as value in this context.

As noted above, the definition of value in both 11 U.S.C. § 548(d)(2)(A) and Cal. Civ. Code § 3439.03 excludes an unperformed promise to provide future support to the debtor or to another person. The rationale of these provisions, although not their precise language, precludes treating the Debtor's waiver of future spousal support as value.[3] The rationale behind the statutory exclusion is that an unperformed promise to provide future support to the debtor does not benefit creditors in a liquidation. In re Lucas Dallas, Inc., 185 B.R. 801, 807 (Bankr. 9th Cir. 1995)(citing California legislative history); see In re Agric. Research & Tech. Group, Inc., 916 F.2d 528, 540 (9th Cir. 1990)(citing comment to Uniform Fraudulent Transfer Act). Similarly, in a chapter 7 case, the waiver of a debtor's obligation to pay future spousal support from his post-petition income does not create value from a creditor's perspective.

However, the Court concludes that the Debtor's agreement to pay her own attorneys' fees did constitute value for purposes of this proceeding. If the Debtor had been ordered to pay Silvia's attorneys' fees, those fees would constitute a claim against his

---

[3]The definition contemplates a scenario whereby the debtor transfers property of tangible value to a third party in return for the third party's agreement to provide support to him in the future.

12

bankruptcy estate. By eliminating this claim, other creditors would be benefitted by having fewer creditors with which to share any proceeds from the estate.

There are two admitted weaknesses in the Court's conclusion. First, the family law court had not yet ordered the Debtor to pay Silvia's attorneys' fees when she entered into the MSA. However, the Court finds that it is more likely than not that the family law court would have made such an order. The evidence established a dramatic disparity in the parties' incomes. Silvia had the primary responsibility for the care of the couple's two young children and worked a waitress for minimum wage plus tips. The Debtor worked for a company that performed industrial painting, e.g., on bridges, earning as much as $21 an hour. He had had an income of $100,000 in 2005 although he testified without contradiction that he was likely to earn substantially less in 2006.

Second, no evidence was presented establishing the precise amount of the attorneys' fees that had been incurred by Silvia. However, evidence was provided that the dissolution proceeding had been litigious. An evidentiary hearing was required in connection with the temporary support order. A final evidentiary hearing had been scheduled to resolve all the marital issues. The MSA was settled shortly before the trial date after considerable negotiation. Based on this evidence, the Court finds it more likely than not that Silvia had incurred substantially more than $7,325 in attorneys' fees.

13

**(2) Insolvency**

Having concluded that the Debtor received reasonably equivalent value in exchange for the transfers, the Court need not address the issue of whether the Debtor was insolvent at the time of the transfers or was rendered insolvent by them. Nevertheless, the Court will do so to establish a record in the event of an appeal. Based on the evidence presented, the Court finds and concludes that the Debtor was either insolvent at the time of the transfers or was rendered insolvent as a result of the transfers.

The Trustee contended that, as a result of the transfers, the Debtor was left with only three vehicles, the unencumbered value of which totaled $3,500. The evidence established that, at the time of the transfers and thereafter, the Debtor had unsecured debt on three credit cards totaling over $17,000. Therefore, even if the Debtor was not insolvent at the time of the transfers, the Debtor was rendered insolvent as a result of the transfers.

**C. RECOVERY OF AVOIDED TRANSFER OR ITS VALUE**

**1. Applicable Law**

Section 550(a) of the Bankruptcy Code provides, in pertinent part, that:

> Except as provided in this section, to the extent that a transfer is avoided under section 544...of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
> (1) the initial transferee of such transfer...
> (2) any immediate or mediate transferee of such initial transferee.

14

Section 550(b)(1) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may not recover under section (a)(2) of this section from—
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided....

11 U.S.C. § 550(b)(1).

**2. Decision**

The Trustee seeks to recover the avoided transfers or their value from Silvia and Newcomb.[4] Silvia is the immediate transferee of both transfers and thus, if the transfers were avoidable, would be absolutely liable for their value: i.e., $37,900. See 11 U.S.C. § 550(a)(1).

Newcomb is a subsequent transferee of the Debtor's interest in the House pursuant to 11 U.S.C. § 550(a)(2). Section 550(b)(1) provides a defense to the recovery action for a subsequent transferee who gave value for the transfer, including the satisfaction or securing of an antecedent debt, in good faith, without knowledge of the avoidability of the transfer to the extent of the value given.

Based on the evidence presented, the Court finds that Newcomb acted in good faith without knowledge of the avoidability of the transfer. However, the Court finds that Newcomb did not give value for the transfer. Although the evidence established that Newcomb had

---

[4] As with the issue of insolvency, since the Court has concluded that the transfers are not avoidable, the Court need not address this issue and does so only to create a record.

15

loaned the couple $25,000 for the down payment for the House, no evidence was presented that Silvia transferred title to the House to Newcomb to satisfy or secure that debt. Therefore, if the transfers were avoidable, the Court would find Newcomb liable to transfer the Debtor's interest in the House to the bankruptcy estate.

## CONCLUSION

The Court finds for Silvia on the first and third claims, seeking to avoid the transfers as actually fraudulent. The Court also finds for the Silvia on the second and fourth claims, seeking to avoid the transfers as constructively fraudulent. Consequently, the Court also finds for the defendants Silvia and Newcomb on the fifth claim, to recover the avoided transfers. No evidence was presented on the six and seventh claims. As a result, they are dismissed without prejudice. Counsel for the defendants is directed to submit a proposed form of judgment in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Gerald C. Vanoli
3445 Golden Gate Way
P.O. Box 479
Lafayette, CA 94549-0479

Joanne LaFreniere
Stromsheim & Associates
201 California St., Ste. 350
San Francisco, CA 94111